# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-1745

EDGEWATER FOUNDATION,

*Plaintiff-Appellant,*

v.

TOMMY G. THOMPSON, **Secretary of
Health and Human Services,**

*Defendant-Appellee.*

————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 6600—**Wayne R. Andersen**, *Judge.*

————————

ARGUED OCTOBER 29, 2003—DECIDED DECEMBER 1, 2003

————————

Before FLAUM, *Chief Judge*, and EASTERBROOK and
KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In January 1989
Edgewater Hospital, a Medicare provider, sold portions of
its operations to three successors: Edgewater Property Co.
bought the building; Edgewater Operating Co. bought the
equipment, records, and ongoing operations; and Peter
Rogan, the sole shareholder of these two firms, bought the
Hospital's receivables. The old owner changed its name
from Edgewater Hospital, Inc., to Edgewater Foundation.
Sale of the business meant that accounts had to be settled
between the Hospital (and its successors) and the Medicare
program. After extended proceedings that it is unnecessary

to recount, the parties resolved most outstanding issues. They agreed that Medicare owed the Hospital about $6.4 million as of the date the Hospital sold its assets and operations, and that Edgewater Operating Co. owed the Medicare program about $4 million for overpayments received during 1989 and 1990. All obligations were offset, and the Medicare program paid the balance.

Although the parties agreed on these numbers, they did not agree on the calculation of interest under 42 U.S.C. §1395g(d). Edgewater Foundation, as the Hospital's successor (proceeding in this respect as Rogan's proxy), claims an entitlement to interest on the $6.4 million between January 1989 and the time the (net) payment of about $2.4 million was made. As the Foundation sees things, it is distinct from Edgewater Operating Co., so that overpayments after the sale should not be set off against underpayments that preceded the sale. The Administrator of the Health Care Financing Administration (part of the Department of Health and Human Services) made the final administrative decision and determined that the Foundation and the Operating Company are jointly and severally liable for reimbursements of all overpayments, because the Medicare program is entitled to treat a single hospital as one "provider" and to net all balances without regard to private arrangements for the disposition of the proceeds. The Administrator wrote: "Because the provider agreement was automatically assigned to the new owner, the old and new owner are jointly and severally liable for the overpayment." That conclusion cut off the Foundation's demand for interest, because the Medicare program paid the net balance within 30 days of its ascertainment.

The Foundation filed this civil action under 42 U.S.C. §1395oo(f)(1), contending that it is entitled to interest on the $6.4 million that was due on account of events that preceded the sale in January 1989. Instead of deciding

whether the Administrator had erred in netting this sum against overpayments to the Operating Company during 1989 and 1990, the district court directed the agency to determine whether the $6.4 million (which is, recall, a figure on which all parties had agreed) had been correctly calculated. In the judge's view, if payment was excessive, interest need not be added. The court remanded the matter to the Department of Health and Human Services with directions "to determine the following: 1) The legitimacy of the valuations used as a basis for the reimbursement; 2) The role of Peter Rogan in the transactions and the appropriateness of any payments ultimately made to him; and 3) The payors and payees of all Medicare payments made after the closing of the hospital regarding the 'loss on sale'." Neither side had argued to the district court that any of these matters is pertinent; no one had requested a remand.

One might have anticipated an appeal by the Administrator, on the ground that a district court lacks authority to treat the bureaucracy as an ombudsman that may be directed to inquire into whatever issues pique the judge's curiosity. Whether the $6.4 million settlement was correct is neither here nor there; it had not been raised as an issue in the litigation; and if the settlement was excessive, it is not the kind of error for which any statute provides either administrative or judicial review. The Health Care Financing Administration has duties prescribed by statutes and regulations; looking behind the validity of settlements, and determining who paid how much of the proceeds to whom, are not among them. Courts are supposed to address the parties' actual disputes, rather than the disputes that judges think the parties ought to have, and are supposed to resolve administrative cases on the record. The Medicare statute lacks any parallel to Sentence Six of 42 U.S.C. §405(g), which authorizes remand of disability-benefits matters to receive new evidence. (The sort of remand

ordered here would have been outside the scope of Sentence Six in a disability-benefits proceeding anyway; the matters specified for determination do not concern new evidence.) Remands usually are not appealable, because they are not "final" decisions; but remands that otherwise may escape appellate review may be reviewable immediately. See *Sullivan v. Finkelstein*, 496 U.S. 617 (1990); *Travis v. Sullivan*, 985 F.2d 919 (7th Cir. 1993). From the agency's perspective, this may well be such an otherwise-unreviewable remand, as only the Foundation can seek judicial review of the new administrative decision, and only an immediate appeal could vindicate the agency's interest in avoiding pointless (if not *ultra vires*) administrative proceedings.

But the agency did not appeal and thus has accepted (and is bound to comply with) the terms of the remand. The appeal now before us was filed by the Foundation, which contends that the inquiries the agency has been ordered to conduct are legally irrelevant to its claim for interest. The Foundation wants *us* to review the Administrator's interest decision directly, sparing the parties the need to conduct unnecessary and potentially futile administrative proceedings. The problem, however, is that the statute places review of the Administrator's decisions in the district court, not the court of appeals, and the district court has not finished that task—indeed, has not begun it. The decision asking the agency for more information is no more "final" than is a decision requiring additional discovery, or denying summary judgment and setting a case for trial. A litigant's belief that the discovery or trial is unnecessary—even doomed, because the proceedings are infected by error—does not make the decision immediately appealable.

The district court has yet to decide whether the Foundation is entitled to interest. Once that decision has been made—as it surely will be, once the agency has answered

the questions posed by the remand order—then the losing side will be entitled to appeal. If the questions that the district judge framed are not legally material, and the judge nonetheless uses the answers to resolve the dispute about interest, then the appeal from that final decision will provide an opportunity for correction by this court.

According to the Foundation, however, a series of decisions by the Supreme Court about the finality of remands in disability-benefits cases establishes that remands to agencies are appealable. We have mentioned *Finkelstein*, which offers the Foundation no comfort. It holds that a remand is final when the main question will not recur after the agency's new decision. That cannot be said of this dispute about interest. Unless the agency decides, in light of its answers to the issues posed in the remand order, that the Foundation is entitled to interest on the whole $6.4 million—exceedingly unlikely, given the nature of the questions the judge framed and the reason why he asked the agency to address them—the dispute will continue and the Foundation can obtain review by filing an appropriate pleading in the district court. The other decisions are *Forney v. Apfel*, 524 U.S. 266 (1998), and *Shalala v. Schaefer*, 509 U.S. 292 (1993). These are based on language in the Social Security Act specifying that particular decisions are final. See 42 U.S.C. §405(g), Sentence Eight. The Court stated in *Forney* that "this statutory language means what it says". 524 U.S. at 269. There is no comparable language in §1395*oo*. To the extent that *Finkelstein*, *Schaefer*, and *Forney* can be generalized beyond §405(g), we concluded in *Perlman v. Swiss Bank Corp. Disability Plan*, 195 F.3d 975, 979 (7th Cir. 1999), that the rule they establish is this: "If the district court finds that the [administrative] decision was erroneous and enters a judgment wrapping up the litigation, that decision is appealable even if extra-judicial proceedings lie ahead; but if the court postpones adjudication until after additional

evidence has been analyzed, then it has not made a final decision." In this suit the district court has postponed adjudication until after additional evidence has been analyzed. That is not a final decision.

That the district court ended its opinion with the line "This is a final and appealable order" is regrettable. It all but compelled the Foundation to take an immediate appeal, lest it tempt the district judge to hold later that by inaction the Foundation had given up its principal claim. Yet district judges cannot determine the scope of appellate jurisdiction or authorize appeals from interlocutory orders, other than through the means provided by 28 U.S.C. §1292(b). This proceeding does not warrant an interlocutory appeal under that statute, however, and at all events the district judge did not make the findings specified by §1292(b). Despite the judge's nomenclature, the suit has *not* been "terminated" in the district court; it is apparent that the judge expects to resume the proceedings after receiving the agency's findings. Once the agency has made its findings, the Foundation should file an appropriate motion in the existing civil action (No. 00 C 6600), and the district judge should make a prompt decision so that this lingering dispute can at last be concluded.

The appeal is dismissed for want of jurisdiction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*