# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1720

———————

Lee Borntrager, et al.,

      Plaintiffs - Appellees,

v.

Central States, Southeast and
Southwest Areas Pension Fund,

      Defendant - Appellant.

\* Appeal from the United States
District Court for the
Northern District of Iowa.

———————

Submitted: February 17, 2005
Filed: October 10, 2005

———————

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.

Central States, Southeast and Southwest Areas Pension Fund ("Central States") is a multi-employer pension fund subject to the federal labor laws and the Employee Retirement Income Security Act ("ERISA"). See 29 U.S.C. §§ 186(c)(5), 1301(a)(3), 1322a, 1341a, 1381. CRST Flatbed, Inc., and CRST Van Expedited, Inc. (collectively, "CRST"), are interstate trucking companies that entered into collective bargaining agreements with local unions which require CRST to make defined benefit contributions to Central States on behalf of their employees. Central States expelled CRST for violating Central States's "adverse selection" policy. CRST and affected

union member employees including Lee Borntrager commenced this action, seeking an order declaring that CRST was wrongfully expelled and other relief.

Central States moved to dismiss the complaint, arguing that the district court lacked jurisdiction over the wrongful expulsion claim. After denying that motion, the court remanded the matter to the Central States Trustees "for further development of the record" and ordered the Trustees "to allow the plaintiffs discovery" on the adverse selection issue. Central States appeals the remand and discovery order. CRST moved to dismiss the appeal on the ground that the order is not a final decision under either 28 U.S.C. § 1291 or the collateral order doctrine. We deferred consideration of the motion to dismiss until the appeal was briefed and argued. For the following reasons, we now grant the motion and dismiss the appeal for lack of appellate jurisdiction.

## I. Background.

To place this rather unusual jurisdiction issue in proper context, we briefly review the factual and legal setting, the claims asserted in the lawsuit, and the relevant rulings of the district court.

A.  The Expulsion.  In their collective bargaining agreements, CRST and the local unions agreed to be bound by the Trust Agreement that created Central States. Article III, § 1 of the Trust Agreement authorizes the Central States Trustees to -

> reject any collective bargaining agreement of an Employer (and all contributions from the Employer) whenever they determine . . . that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund.

Applying this provision, Central States adopted Special Bulletin 90-7 declaring that "the Trustees will terminate" participation by an employer that engages in the

actuarially unsound practice of "adverse selection," which the Bulletin generally describes as an arrangement that "restricts pension coverage to only those employees likely to receive a benefit and excludes those employees less likely to receive a benefit." This prohibition is based on the "universal actuarial assumption" for benefit plans such as Central States that "the contributions of new members who replace retiring members will be used in part to pay the benefits due retired members." Cent. Hardware Co. v. Cent. States, SE & SW Areas Pension Fund, 770 F.2d 106, 110 (8th Cir. 1985), cert. denied, 475 U.S. 1108 (1986).

After an audit, Central States concluded that CRST was violating this adverse selection policy by replacing departing employees with independent contractors, thereby depriving Central States of new member contributions to help pay benefits due to CRST's remaining employees as they retire. Though this subcontracting was apparently not a violation of CRST's collective bargaining agreements, the Central States Trustees terminated CRST and its bargaining unit employees from participation in the fund on the ground that CRST's practices threaten to cause economic harm and to impair the actuarial soundness of the pension fund.

B. The MPPAA. In 1980, Congress amended ERISA by enacting the Multi-Employer Pension Plan Amendments Act ("MPPAA"), codified in Subtitle E of ERISA, 29 U.S.C. §§ 1381-1453. To counter the threat that voluntary employer withdrawals pose to the viability of underfunded multi-employer pension funds, especially in declining industries, the MPPAA imposed a withdrawal liability equal to the withdrawing employer's proportionate share of the fund's "unfunded vested benefits." 29 U.S.C. §§ 1381, 1391; see Pension Ben. Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 720-25 (1984).

Under the MPPAA, withdrawal liability is triggered by an employer's "complete withdrawal" from the plan, that is, "when the employer 'permanently ceases to have an obligation to contribute under the plan' or 'permanently ceases all

covered operations under the plan.'" Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 196 (1997), quoting 29 U.S.C. § 1383(a). The MPPAA also provides that an employer or plan beneficiary "adversely affected by the act or omission of any party under [Subtitle E] with respect to a multiemployer plan . . . may bring an action for appropriate legal or equitable relief, or both." 29 U.S.C. § 1451(a)(1). However, a dispute over the amount of withdrawal liability must first be arbitrated. See 29 U.S.C. § 1401(a)(1); Trustees of Colorado Pipe Ind. Pension Trust v. Howard Elec. & Mech., Inc., 909 F.2d 1379, 1385-86 (10th Cir. 1990), cert. denied, 498 U.S. 1085 (1991). In this case, CRST paid the amount of withdrawal liability assessed by Central States after the expulsion ($358,534).

C. The Claims at Issue. In their amended complaint, CRST and the employees assert that CRST was wrongfully expelled from the pension fund, that the expulsion breached and tortiously interfered with CRST's collective bargaining agreements, that Central States thereby violated the employees' rights under ERISA to qualify for pension benefits, and that Central States is guilty of "disparate treatment" because it has not enforced the adverse selection policy against its largest contributor, UPS. For relief, the complaint seeks an order declaring the expulsion invalid, reinstating CRST to the fund, granting the employees retroactive pension service credits, and reimbursing CRST "for the full amount of withdrawal liability already paid."

Central States moved to dismiss for lack of jurisdiction, arguing that neither the MPPAA nor any ERISA provision regulates employer expulsions, that CRST's other claims are preempted by ERISA, and that the individual employees fail to state a claim under ERISA. Plaintiffs responded that the court has jurisdiction under 29 U.S.C. § 1451 because the expulsion "is forcing CRST's complete withdrawal from the fund" within the meaning of the MPPAA, and that the dispute is not subject to arbitration under the MPPAA because CRST is not contesting the amount of withdrawal liability.

D.  The District Court's Rulings.  The district court denied Central States's motion to dismiss the wrongful expulsion claim, concluding that it has jurisdiction because the language of 29 U.S.C.§ 1451(a)(1) "is broad enough to encompass an action such as this one challenging an expulsion from a pension plan."  The court subsequently denied CRST's motion to expand the Central States administrative record with discovery addressing the pension fund's treatment of UPS.  CRST then moved to remand the proceedings to the Central States Trustees for further consideration of whether Central States has consistently applied the adverse selection policy to CRST and UPS, on the ground that consistency of plan interpretation is a factor we consider in determining whether an ERISA plan administrator abused its discretion in denying plan benefits.  See Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).  The district court granted this motion, remanding the matter to the Central States Trustees "for consideration of all relevant documents relating to UPS' alleged violation of defendant's adverse selection policy and to allow the plaintiffs discovery on this issue."  Order of Feb. 24, 2004, at p.4. Central States appeals the remand and discovery order and argues that the district court lacks jurisdiction under § 1451.

## II.  Appellate Jurisdiction.

The circuit courts have jurisdiction over "final decisions of the district courts." 28 U.S.C. § 1291.  In general, an interlocutory order may not be appealed unless it includes the grant or denial of an injunction, § 1292(a)(1); or the district court has certified a controlling issue of law under § 1292(b); or the court has directed entry of a partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; or the order is appealable as a final order under the judicially created collateral order doctrine.  See Great Rivers Co-op. of S.E. Ia. v. Farmland Indus., Inc., 198 F.3d 685, 688-89 (8th Cir. 1999).

A number of our sister circuits have held that an order remanding to an ERISA plan administrator for further proceedings is interlocutory in nature and therefore not immediately appealable, particularly when the district court retained jurisdiction or otherwise deferred considering the merits of the administrator's decision being reviewed. See Bowers v. Sheet Metal Workers' Nat'l Pension Fund, 365 F.3d 535, 537 & 537 n.1 (6th Cir. 2004); Rekstad v. First Bank Sys., Inc., 238 F.3d 1259, 1262 (10th Cir. 2001); Williamson v. Unum Life Ins. Co. of Am., 160 F.3d 1247, 1250-52 (9th Cir. 1998); Petralia v. AT&T Global Info. Solutions, Inc., 114 F.3d 352, 354 (1st Cir. 1997); Shannon v. Jack Eckerd Corp., 55 F.3d 561, 563 (11th Cir. 1995). Central States argues that this case is distinguishable for a number of reasons.

1. First, Central States argues that we have jurisdiction under 28 U.S.C. § 1291 because the district court's remand order is final -- the order does not state the court was retaining jurisdiction, and the Clerk of Court entered a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure. We disagree. A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Cunningham v. Hamilton County, 527 U.S. 198, 204 (1999) (quotation omitted). The district court's remand and discovery order does not meet this test. The court did not resolve the merits of the wrongful expulsion dispute, the claims of the individual employees, or CRST's claim for reimbursement of withdrawal liability paid. Indeed, the court expressly stated it was remanding for "further development of the record . . . in order for this court to conduct a proper review of the defendant's decision to expel CRST." Thus, there is lacking here the requisite "clear and unequivocal manifestation by the trial court" that its order is the end of the case. Minnesota v. Kalman W. Abrams Metals, Inc., 155 F.3d 1019, 1023 (8th Cir. 1998). The Clerk's entry of a Rule 58 judgment does not alter the interlocutory nature of the remand order. See Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737 (1976); Edgewater Found. v. Thompson, 350 F.3d 694, 697 (7th Cir. 2003).

2. Second, Central States urges us to apply the Supreme Court's decision in Sullivan v. Finkelstein, 496 U.S. 617 (1990), which held that a "sentence four" remand of a Social Security disability case to the administrative agency is an appealable final order. Drawing an analogy between orders remanding Social Security disability decisions and ERISA plan benefits decisions has some support. See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 978-79 (7th Cir. 1999). But the analogy urged by Central States is unsound because Finkelstein was based on the Court's conclusion that the Social Security statute expressly declares that sentence four remand orders are final judgments for purposes of 28 U.S.C. § 1291. See Forney v. Apfel, 524 U.S. 266, 269 (1998). ERISA has no comparable provision. Moreover, numerous cases have held that an order remanding to a federal agency for further proceedings is not a final order within the meaning of § 1291. See Giordano v. Roudebush, 565 F.2d 1015, 1017 (8th Cir. 1977), and cases cited. Thus, drawing a more general analogy between orders remanding to agencies and to ERISA plan administrators does not support Central States's position.

3. Central States further argues that we should treat the remand order as final because "Central States is in a position where it may never receive appellate review of the district court's decision." In our view, this is the nub of the jurisdictional issue. Other circuits have held that orders remanding to administrative agencies are appealable final orders in certain exceptional circumstances. The Ninth Circuit, for example, considers such an order appealable when it "resolves a separable legal issue," an erroneous remand "may result in a wasted [agency] proceeding," and appeal would be foreclosed unless an immediate appeal were available. Rendleman v. Shalala, 21 F.3d 957, 959 n.1 (9th Cir. 1994). The Ninth Circuit applied that principle to orders remanding to ERISA plan administrators in Hensley v. Northwest Permanente P.C. Ret. Plan & Trust, 258 F.3d 986, 993 (9th Cir. 2001), cert. denied, 534 U.S. 1082 (2002). Central States urges us to adopt the Ninth Circuit's approach in this case.

The Ninth Circuit's test for determining when an order remanding to an agency is immediately appealable strongly resembles the Supreme Court's more general collateral order doctrine, under which an interlocutory order is immediately appealable if it conclusively "resolve[s] an important issue completely separate from the merits of the action" and is "effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978). Indeed, tracing the Ninth Circuit's test to its origin confirms that it was expressly based on Cohen v. Beneficial Ind. Loans Corp., 337 U.S. 541 (1949), which is often cited as the source of the collateral order doctrine. See Stone v. Heckler, 722 F.2d 464, 467 (9th Cir. 1983). This is significant because the Supreme Court has stressed that the collateral order doctrine remains a "narrow exception" that should "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994). While there may be factors unique to the world of administrative law that justify a somewhat broader final order exception for orders remanding to federal agencies, in our view no such factors apply to orders remanding to private ERISA plan administrators. Therefore, we hold that Central States must satisfy the Supreme Court's collateral order standard, not the Ninth Circuit's somewhat different standard in Hensley, to justify an immediate appeal.

Applying the collateral order standard, we conclude that the district court has not conclusively resolved an important issue completely separate from the merits of the action that would be effectively unreviewable on appeal from a final judgment. First, Central States seeks to appeal the district court's assumption of jurisdiction over the wrongful expulsion claim. That issue is integral to the merits and clearly reviewable on appeal from a final judgment resolving the merits of the wrongful

-8-

expulsion claim.[1] Second, Central States challenges the district court's decision to remand, arguing that the court erred in expanding its judicial review to include arguments not made to and documents not considered by the Trustees. Again, that issue is integral to the merits of the wrongful expulsion claim. Without question, the record considered by the district court and the standard of review it applied are reviewable on appeal from a final judgment. See, e.g., Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 642 (8th Cir. 1997). To be sure, Central States would prefer to be spared the time and expense of an erroneous remand. However, "the possibility that a ruling may be erroneous and may impose additional litigation

---

[1]As our decision in Central Hardware makes clear, the contention there is *no* federal jurisdiction over CRST's wrongful expulsion claim is plainly without merit. Before the enactment of ERISA in 1974, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), conferred federal jurisdiction over claims alleging breach of a pension or welfare benefit trust agreement that was an integral part of a collective bargaining agreement. See Alvares v. Erickson, 514 F.2d 156, 160-64 (9th Cir.), cert. denied, 423 U.S. 874 (1975). ERISA of course greatly expanded federal regulation of pension funds and granted federal courts broad jurisdiction over civil actions to interpret and enforce those plans. See 29 U.S.C. § 1132. In Central Hardware, the district court accepted jurisdiction over a wrongful expulsion claim under § 1132(e), and we reviewed the merits of that claim without discussing the jurisdiction issue. Central Hardware Co. v. Central States, Southeast & Southwest Areas Pension Fund, 595 F. Supp. 414, 416 (E.D. Mo. 1984), rev'd, 770 F.2d at 108-111.

In this case, the district court may have erred in assuming jurisdiction under 29 U.S.C. § 1451 if expulsion is not an "act" under Subtitle E, but that issue can be taken up on appeal from the final judgment. Moreover, if the expulsion was valid, the district court will need to decide whether such an expulsion triggers withdrawal liability under the MPPAA, an issue that may be subject to mandatory arbitration. Compare Rheem Mfg. Co. v. Central States SE & SW Areas Pen. Fund, 63 F.3d 703, 705-06 (8th Cir. 1995), cert. denied, 516 U.S. 1146 (1996), with Teamsters Pen. Trust Fund v. Allyn Transp. Co., 832 F.2d 502, 504-05 (9th Cir. 1987). Section 1451 clearly confers federal jurisdiction over CRST's claim for reimbursement of that statutory liability.

expense is not sufficient to set aside the finality requirement imposed by Congress." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 499 (1989) (quotation omitted).

Finally, Central States challenges the district court's order "to allow the plaintiffs discovery." It is well-established that pre-trial discovery orders are almost never immediately appealable. See Tenkku v. Normandy Bank, 218 F.3d 926, 927 (8th Cir. 2000). Other circuits have applied the collateral order doctrine to permit immediate appeal of pre-trial discovery orders only in exceedingly narrow circumstances, such as when the discovery order would compel the production of allegedly privileged information. See Bacher v. Allstate Ins. Co, 211 F.3d 52, 53-55 (3rd Cir.), cert. dismissed, 530 U.S. 1300 (2000). Central States suggests that the discovery order in this case compels the Trustees to include in this record documents explaining their treatment of some 3,000 participating employers. But that is an overstatement. The district court lacks statutory authority to *compel* an ERISA plan administrator to conduct or permit discovery. Here, by remanding for "further development of the record," the district court has intimated that it would refuse to uphold the decision to expel CRST on the existing record. But Central States remains free, on remand, to confirm or reinstate the expulsion order on the existing record and then defend its decision in the district court. The issue would then be reviewable on appeal from the court's final judgment. The fact that an interlocutory discovery order may be onerous or inconvenient does not make the order immediately appealable under the collateral order doctrine. See Digital Equip., 511 U.S. at 872; Edgewater Found., 350 F.3d at 696-97; Bacher, 211 F.3d at 57.

The appeal is dismissed for lack of jurisdiction.

_____

-10-