# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1403

_____

| | | |
|---|---|---|
| Larry D. Davies; Ruth A. Davies, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Mike Johanns, in his capacity as | * | |
| Secretary of the United States | * | |
| Department of Agriculture; United | * | |
| States Department of Agriculture, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  October 20, 2006
Filed:  February 14, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Davieses are farmers who entered into a ten-year Shared Appreciation Agreement (SAA) with the Farmers Home Administration (FmHA), pursuant to which the FmHA agreed to write down a portion of their debt in exchange for a percentage of the appreciation in the value of their property during the term of the agreement. Upon the expiration of the agreement, the Farm Service Agency (FSA)[1] sought to

_____

[1]The Farmers Home Administration is now the Farm Service Agency.

recapture a portion of the appreciation. The Davieses contested the manner in which the FSA assessed the amount that their property had appreciated and, after pursuing administrative remedies, filed this action against the Secretary of Agriculture (Secretary) for declaratory and injunctive relief. The district court set aside the Secretary's decision and remanded the case for further proceedings. We reverse.

## I.

The Agricultural Credit Act of 1987, Pub. L. No. 100-233, 101 Stat. 1679 (1988), as codified at 7 U.S.C. § 2001 (2006), allows farmers and ranchers to restructure their debts on various agricultural loans. The statute provides for a write-down of secured debt to reflect the value of the land securing the loan. 7 U.S.C. § 2001(a)-(d). In exchange for the write-down, the Secretary of Agriculture may require farmers to enter into a SAA, which allows the Secretary to recapture a portion of the appreciation in the value of the property securing the loan over the term of the agreement. 7 U.S.C. § 2001(e). Because the amount that the Secretary may recapture is based on the property's appreciation in value, the Secretary must make two appraisals of the property's value: one at the commencement of the SAA term and another at its conclusion. The value of the appreciation is the difference between the two.

In 1991, the year in which the Davieses' property was first appraised, farm appraisals were conducted pursuant to 7 C.F.R. § 1809 (1991), which states that there are two types of value that may be considered in calculating a "Recommended Market Value" (the appraised value of the property): agricultural value and market value. 7 C.F.R. § 1809.2. The agricultural value of the farm is the "amount a typical purchaser would, under usual conditions, be willing to pay and be justified in paying for the farm, as improved, for customary agricultural uses, including farm-home advantages, with the expectation of receiving typical net earnings from the farm." 7 C.F.R. § 1809.2(a). Agricultural value "is based upon agricultural assets only" and "depends

in a large measure on the earning ability of the farm." Id. Market value is the "amount a typical purchaser would be willing to pay and justified in paying for the property considering agricultural uses and nonagricultural assets the property may have." 7 C.F.R. § 1809.2(b).

The regulations under 7 C.F.R. § 1809 further provide that farm appraisals will be based on a three-way approach to value. These three approaches are 1) market data, which relies upon "sale prices of comparable properties;" 2) capitalization, which is "the amount that a prudent investor likely would pay for the property based on its future earnings and advantages;" and 3) summation, which looks to the value of the land and essential buildings. 7 C.F.R. § 1809.4(a)-(c). The appraiser is to consider the results of each of these approaches, assess their strengths and weaknesses, and make appropriate adjustments before arriving at a final Recommended Market Value. 7 C.F.R. § 1809.4(d). Generally, "the value indicated by the market data approach is the most reliable indicator of value." Id.

During the course of the Davieses' SAA term, new appraisal regulations were established, including 7 C.F.R. §1951.914(c)(1) (2002), which provides that property subject to appraisal under a SAA is to be appraised at its "highest and best use" and that the appraisal shall be conducted in accordance with 7 C.F.R. § 761.7. Under § 761.7, real estate appraisals must comply with the Uniform Standards of Professional Appraisal Practice (USPAP). 7 C.F.R. § 761.7(c)(1) (2002). USPAP, as the name implies, sets forth uniform standards and practices to which appraisers must adhere. USPAP also requires, where applicable, consideration of three different approaches to value: sales comparison, cost, and income. USPAP, Standards Rule 1-4.

The Davieses' land consists of 510 acres, divided into four parcels. In 1992, the FmHa wrote down the Davieses' debt from $379,175.42 to $199,469.91. The Davieses, in return, entered into a SAA, pursuant to which the Secretary would be

entitled to 50% of the appreciation in the value of their land during the term of the agreement. Based upon a 1991 appraisal, the Secretary determined that the value of the property was $331,200. The SAA term expired in 2002, and the Davieses' property was appraised again and valued at $630,500. The Secretary determined that the Davieses owed $148,150 (half the value of the appreciation, minus half the value of some capital improvements).

The Davieses filed an appeal with the National Appeals Division of the Department of Agriculture (NAD), contesting the method by which the 2002 appraisal of their property was conducted. They contended that the regulations used to appraise their property at the beginning of the SAA term were different from those used at the end of the term and that this resulted in an improper comparison for purposes of calculating the appreciation over the term of the agreement. The hearing officer affirmed the Secretary's decision, concluding, *inter alia*, that the Davieses had failed to establish that the regulatory change had any effect on the Recommended Market Value calculated for the property. The director of the NAD affirmed the hearing officer's determination. The Davieses then filed this action for declaratory and injunctive relief. As recounted above, the district court set aside the Secretary's decision and remanded the case for further proceedings.

## II.

We have jurisdiction over "final decisions of the district courts." Acton v. City of Columbia, 436 F.3d 969, 973 (8th Cir. 2006) (quoting 28 U.S.C. § 1291). This finality requirement "is to be given a practical rather than a technical construction," Gillespie v. United States Steel Corp., 379 U.S. 148, 152 (1964) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)) (internal quotation marks omitted), and we have recognized that "there may be factors unique to the world of administrative law" that warrant a somewhat less restrictive application of the final judgment rule. Borntrager v. Cent. States, Southeast and Southwest Areas Pension

Fund, 425 F.3d 1087, 1092 (8th Cir. 2005).  If, for example, an order remanding a case for further administrative proceedings will likely escape appellate review unless subject to immediate appeal, the order may be considered final for purposes of 28 U.S.C. § 1291.  Hanauer v. Reich, 82 F.3d 1304, 1306-07 (4th Cir. 1996).  Moreover, an order remanding a case to an administrative agency may be considered final for jurisdictional purposes when there is little left remaining to be done with the case except some ministerial proceedings.  See Pauly v. United States Dep't of Agric., 348 F.3d 1143, 1148 (9th Cir. 2003) (per curiam) (concluding that a partial remand order requiring the recalculation of recapture, an essentially ministerial proceeding, may be considered a final order for the purposes of appellate jurisdiction).  In light of the foregoing considerations, we conclude that the district court's order may be considered final for purposes of appellate jurisdiction.  Although the order may not be final in the strictest sense of the word because of the need for further administrative proceedings, those proceedings would be principally concerned with the reappraisal of the Davieses' property under the regulations in effect in 1991. Moreover, the Secretary's ability to seek appellate review of the district court's order would be extinguished if the Davieses prevailed on remand or did not seek further review. Finally, we observe that judicial economy would be ill-served by postponing consideration of the potentially dispositive and fully briefed and argued issue raised in this appeal.  Cf. Pauly, 348 F.3d at 1148 (treating district court's order as "practically final" where postponement of briefed, argued, and potentially dispositive issue would not promote judicial economy).  In these circumstances, the order is final for practical purposes and we may therefore consider this appeal.[2]

---

[2]The Davieses also raised claims concerning the amortization of their repayment obligation and homestead protection, which the district court did not address because of its determinations regarding the calculation of appreciation.  The possibility that these issues could again come before the district court does not alter our conclusion that the district court's remand order is final in a practical sense.  In any case, the fact remains that the Secretary's ability to seek appellate review of the district court's order may be extinguished after remand.

The Davieses contend that any measure of the appreciation in the value of their property requires that the standards used to conduct the appraisals at the beginning of the SAA term must be the same as those employed at the end of the SAA term.[3] The Davieses argue that because the 1991 appraisals were conducted pursuant to 7 C.F.R. § 1809 and the 2002 appraisals were made with reference to 7 C.F.R. §§1951.914(c)(1) and 761.7(c)(1), different formulas were used and thus could not serve as the basis for a proper comparison. Specifically, they contend that under the 1991 regulations the appraisals were to be made solely with reference to agricultural value as described in 7 C.F.R. § 1809.2(a),which the Davieses argue is based primarily on the income stream derived from farming.[4] They argue that the 7 C.F.R. § 1951.914(c)(1) requirement that property be appraised in light of its highest and best use establishes a standard much different than the standards enunciated in 7 C.F.R. § 1809.2(a) because the value derived from the highest and best use is not limited to agricultural production. Should the highest and best use of the property be nonagricultural, for example, income from farming would not be a material consideration.

"When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604, 607-08 (2000) (citation omitted). The Secretary does not appear to contest the contractual nature of the SAA. Nor does he disagree with the contention that a proper estimate of appreciation requires that the same valuation measure be used before and at the conclusion of the SAA term. Instead, the Secretary argues that the regulations in place in 1991 and those in effect in 2002 are consistent with one another

_____

[3]There were eight appraisals conducted in this case: each of the Davieses' four parcels were appraised in both 1991 and 2002.

[4]They contend that only agricultural value is applicable because the regulation states that market value (as specified in 7 C.F.R. § 1809.2(b)) will be determined only with respect to a limited class of loans. The Secretary disagrees.

and that this reasonable interpretation of his agency's regulations should govern. In addition, the Secretary argues that the actual appraisals conducted in 1991 and 2002 are consistent because they weigh the same considerations and employ the same standards.

Although the contract in this case, the SAA, does not prescribe any particular method for appraising the Davieses' property, the parties agree that the same standards and methodologies must be employed in both the earlier and subsequent appraisals in order to arrive at a proper measure of appreciation. This is not tantamount, however, to a requirement that the regulations underlying these appraisals be the same. For example, even if, as the Davieses argue, the agricultural value standard established in 7 C.F.R. § 1809.2(a) is potentially inconsistent with the highest and best use standard in 7 C.F.R. § 1951.914(c)(1) (because the latter may encompass nonagricultural uses), no such inconsistency will necessarily materialize if the highest and best use of the Davieses' property remained agricultural.

For all practical purposes, both the 1991 and 2002 appraisals appear to have employed consistent methodologies and evaluated the same considerations. First, both sets of appraisals determined that the highest and best use of the Davieses' land was agricultural. Second, the appraisal forms actually used in both sets of appraisals are almost identical, with the exception of the forms used to appraise the parcel containing the Davieses' residence.[5] We cannot discern, and the Davieses have not identified, however, how the differences between these two forms appraising the Davieses' residence would have resulted in inconsistent appraisals. Third, in both the 1991 and 2002 appraisals, the appraisers evidently considered three approaches to

---

[5]USPAP compliance forms are included in each of the 2002 appraisals, but are separate from the actual appraisal forms.

value and reconciled them.[6] Finally, both appraisals compared the Davieses' property to other farms, which included comparisons of the respective properties' locations, percentages of tillable and productive land, soil types, and building improvements.

Although the Davieses argue that the regulations are different, they have not identified any specific inconsistencies between the 1991 and 2002 appraisals.[7] The district court, however, determined that there were differences between the 1991 and 2002 appraisals. It concluded that the capitalization (or income) determinations were inconsistent because the 1991 appraisals looked to the income from farm production, whereas the 2002 appraisals considered the rental value of the property. The Secretary acknowledges that the 2002 appraisals' capitalization calculations considered rental value. The rental value of the property, however, is based on what the farm can produce. It bears mention, too, that under 7 C.F.R. § 1809.4(b)(1), the rental value is preferred because the rental value is not affected by differences in the management abilities of the operator. Accordingly, because the utilization of rental income to determine capitalization value was endorsed by the regulations in effect in 1991, the 2002 appraisals' consideration of rental income cannot be traced to a change in the regulations. Thus, although there may be some differences between the capitalization calculations in the 1991 and 2002 appraisals, they do not appear to be sufficiently material to render the two sets of appraisals inconsistent.

The district court also rejected the Secretary's contention that, because the highest and best use of the property is agricultural, the market data approach reflects

---

[6]Both the 1991 and 2002 forms combine the nomenclature from 7 C.F.R. § 1809.4 and USPAP. Both sets of appraisals, for example, refer to the "capitalization (income) approach."

[7]The Davieses did submit to the district court an independent 2002 appraisal based on agricultural value alone. As the methodology underlying this appraisal appears inconsistent with those employed in both the 1991 and 2002 appraisals, however, it does not illuminate any inconsistencies between them.

what a person would pay for the income generated by the property, reasoning that "the use of comparable sales may be skewed if the highest and best use for surrounding property has changed from agricultural to something else." Davies v. Johanes, 409 F. Supp.2d 1150, 1158 (W.D. Mo. 2006). In this case, however, the Davieses' property was compared to property whose use was also agricultural.

In sum, we conclude that the methodology of the 1991 and 2002 appraisals did not differ in any material respects and that the Secretary's calculation of the recapture owed was therefore proper. Because we have determined that the two sets of appraisals are comparable regardless of potential differences between the regulations in effect when they were conducted, we need not address the question whether the two sets of regulations are consistent.

The order is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

_____