**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHIRLEY A. GRAHAM,

        Plaintiff-Appellant,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendant-Appellee.

Nos. 06-5054 and 06-5142

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 03-CV-0144-CVE)**

---

Joseph F. Clark Jr., Clark & Warzynski, P.A., Tulsa, Oklahoma, for Plaintiff-Appellant.

Timothy A. Carney, Gable & Gotwals, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **KELLY** and **EBEL,** Circuit Judges, and **MURGUIA,**[*] District Judge.

---

**EBEL**, Circuit Judge.

---

[*]Honorable Carlos Murguia, District Court Judge, District of Kansas, sitting by designation.

Plaintiff-Appellant Shirley A. Graham brought suit after she was denied long-term disability benefits under a plan administered by Defendant-Appellee Hartford Life & Accident Insurance Company ("Hartford"). The District Court for the Northern District of Oklahoma concluded that Hartford's denial of Graham's claim violated the Employment Retirement Income Security Act (ERISA) because Hartford's decision was arbitrary and capricious. The court did not award Graham benefits, but instead remanded the claim to Hartford for a "full and fair redetermination." Graham appeals both the decision to remand and the court's earlier decision that ERISA preempted her state law claim. (No. 06-5054.) In companion case No. 06-5142, Graham appeals the court's denial of her request for attorney's fees.

We conclude that the district court's order to remand Graham's claim for benefits to Hartford is not a final decision that gives rise to our jurisdiction under 28 U.S.C. § 1291. Because Graham will have the opportunity later to appeal the issues before us once a final judgment has been entered, we DISMISS this appeal for lack of jurisdiction. We further hold that Graham's related action for attorney's fees is not ripe, and therefore VACATE the district court's denial of her request for fees, and REMAND with directions to dismiss her motion without prejudice.

## I. Background

Graham was employed by the United States Postal Service since 1976 as a mail carrier. She also was a member of the relevant collective-bargaining union, the National Rural Letter Carriers' Association ("NRLCA"). In 1994, while carrying mail, Graham encountered a small but aggressive dog. In stepping away from the dog, she backed off the sidewalk and twisted her knee. This injury required surgery and precipitated more problems in her knees and feet, including osteoarthritis. Despite her attempt to work in a sedentary position for the Postal Service from 1997 to 2000, she continued to have health problems.

NRLCA offered its members the opportunity to participate in a long-term disability insurance plan. Even though the collective bargaining agreement with the Postal Service did not provide for such a plan, the NRLCA arranged for the Postal Service to deduct premiums from its participating employees' paychecks. Graham applied to participate in the NRLCA's long-term disability benefits plan, and became insured on November 22, 1997.

Graham's last day of work was July 15, 2000. She applied for disability retirement with the Postal Service, which was approved on December 1, 2000. On October 27, 2000, Graham filed a claim for long-term disability benefits with Hartford, the administrator of NRLCA's long-term disability plan. Graham submitted a statement from her attending physician, Dr. Jeffrey Emel, that diagnosed ankle osteophytes and an ankle sprain. Hartford considered Graham's

claim in early 2001, and sought a clarification from Dr. Emel regarding Graham's ankle and knee problems. Hartford then denied Graham's claim on the basis that she did not meet the plan's definition of "totally" disabled, defined as unable to perform the essential duties of one's occupation and as a result earn less than 20 percent of one's pre-disability earnings. Hartford specifically concluded that Graham's most recent occupation was classified as sedentary, and that she had not shown that she could not perform sedentary work. Graham appealed, submitting additional documentation from Dr. Emel in which he stated that Graham could not drive or sit for more than an hour at any one time. However, Hartford again rejected Graham's claim on the same basis as its previous denial. Graham made a second and final internal appeal to Hartford, which again denied her claim because it concluded a job that accommodated her disability was available to her.

Having exhausted her internal appeals, Graham filed suit in federal court on February 27, 2003, invoking the court's diversity jurisdiction. She alleged that Hartford had breached its duty of good faith and fair dealing – an Oklahoma state law claim – by failing to investigate, evaluate and pay Graham's claims properly. She further alleged that Hartford's "malicious" and "intentional" conduct had caused her extreme emotional distress and financial losses. As a remedy, she sought actual and punitive damages.

Graham's complaint did not mention ERISA. ERISA provides a private right of action to a beneficiary under an ERISA-covered plan, but limits a

claimant's remedies to "recover[y of] benefits due to him" and "enforce[ment of] his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA does not allow consequential or punitive damages. See Allison v. UNUM Life Ins. Co., 381 F.3d 1015, 1025 (10th Cir. 2004).

The district court first decided that the NRLCA plan was governed by ERISA, and that ERISA preempted Graham's state law claim. Specifically, the court found that the NRLCA plan did not fall under the "governmental plan" exception to ERISA coverage, because the union-offered insurance lacked an adequate connection to governmental control, functional responsibilities and financial support. The district court accordingly dismissed Graham's state law claim against Hartford. The court then ordered the parties to submit an administrative record within 45 days so the court could review the merits of Graham's claim for benefits under the NRLCA plan. In so doing, the court apparently converted Graham's complaint to an ERISA action. There is no indication in the record that Graham objected at this time to the court's decision to substitute her state law claim with one brought under ERISA.

Eight months later, the district court ruled on the merits of Graham's claim for benefits.[1] Employing ERISA, the court concluded that Hartford's decision

---

[1] Neither the parties nor the court precisely described the procedural posture of the case at the time the court rendered its decision to remand Graham's claim. Graham initially submitted a brief to the district court on her "entitlement to benefits" by calling it a "motion for judgment as a matter of law." The clerk

(continued...)

was arbitrary and capricious, specifically that it failed to prove that its denial of benefits was supported by substantial evidence under <u>Sandoval v. Aetna Life & Cas. Ins. Co.</u>, 967 F.2d 377, 382 (10th Cir. 1992).  The court faulted Hartford for: relying on the fact that Graham had been able to work in a modified job for the Postal Service, even though the Postal Service established the accommodation three years prior to her disability benefits claim; giving undue weight to a single statement by her treating physician that was not consistent with the other medical evidence in the record; and not undertaking an independent medical review in the face of conflicting evidence.   The court did not state that Graham was necessarily eligible for disability benefits, but instead found that, in "[v]iewing the record as a whole," Hartford did not meet its evidentiary burden to support the denial of benefits to Graham.

The district court did not award Graham benefits; instead, the court remanded her claim to Hartford "for a full and fair redetermination."  The district

[1](...continued)
requested that Graham refile the document as a brief.  Hartford responded, also in the form of a brief.  The district court's resulting decision simply addresses the merits of Graham's claim under ERISA without reference to any of the motions for judgment permitted under the Federal Rules of Civil Procedure.

Even though ERISA claims have a distinct standard of review, <u>see</u> <u>Firestone Tire & Rubber Co. v. Bruch,</u> 489 U.S. 101, 115 (1989) and <u>Fought v. UNUM Life Ins. Co.</u>, 379 F.3d 997, 1002, 1006 (10th Cir. 2004), we expect a district court's resolution of those claims to comport with the Federal Rules of Civil Procedure, which typically would be to treat them as a motion for summary judgment.  <u>See, e.g.</u>, <u>Allison</u>, 381 F.3d at 1020; <u>Fought</u>, 379 F.3d at 999, 1002; <u>Rekstad v. First Bank Sys.</u>, 238 F.3d 1259, 1261-62 (10th Cir. 2001); <u>Albright v. UNUM Life Ins. Co.</u>, 59 F.3d 1089, 1091 (10th Cir. 1995).

court did not state whether or not it would retain jurisdiction over the matter. However, the docket entries administratively entered for this decision indicate that the court was "dismissing/terminating" the case.

Graham petitioned the district court for attorney's fees, which may be awarded at the court's discretion under ERISA. See 29 U.S.C. § 1132(g)(1). The court applied our five-factor standard from Gordon v. U.S. Steel Corp., 724 F.2d 106, 109 (10th Cir. 1983), and determined that a fee award would be inappropriate. Specifically, the court said it had made no finding of bad faith on the part of Hartford, and noted that "the record does not suggest that plaintiff's claim for benefits is particularly meritorious."

On appeal, Graham: (1) seeks to revive her state law claim, contending that NRLCA's disability insurance is a governmental plan exempt from ERISA because the Postal Service recognizes the NRLCA as a collective-bargaining union; (2) argues that the court should have awarded her disability benefits rather than remanding the claim to Hartford; and (3) asserts that an award of attorney's fees is appropriate, alleging that Hartford engaged in "bad faith" conduct.

Hartford does not appeal the district court's conclusion that its decision was arbitrary and capricious. Instead, Hartford argues that we have no jurisdiction over this appeal, on the theory that a district court's decision to remand a claim to a plan administrator is not a final appealable decision under the meaning of 28 U.S.C. § 1291.

## II. Jurisdiction and Finality

We have jurisdiction "of appeals from all final decisions of the district courts of the United States." 28 U.S.C. §1291. "It is well settled that we can only address the underlying merits of a lawsuit if it meets the requirements for appellate jurisdiction outlined in 28 U.S.C. § 1291." Albright v. UNUM Life Ins. Co., 59 F.3d 1089, 1092 (10th Cir. 1995). "A final decision is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Rekstad v. First Bank Sys., 238 F.3d 1259, 1261 (10th Cir. 2001) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). "In considering whether the judgment constitutes a 'final decision' under § 1291, the label used to describe the judicial demand is not controlling – that is, we must analyze the substance of the district court's decision, not its label or form." Albright, 59 F.3d at 1092 (quotation, citation omitted).

Thus, we must determine if the district court's order to remand, which is the decision giving rise to this appeal, is final.[2] The Tenth Circuit has declined to adopt a hard-and-fast rule regarding whether a district court's order remanding a

---

[2] Graham potentially could have immediately appealed from the district court's initial decision dismissing her state law claim, which was the only claim she alleged in her complaint. She has not done so, though, and instead acquiesced to the district court's conversion of the suit to one stating an ERISA claim. Her notice of appeal characterizes that the earlier decision was interlocutory. The limited statutory exception for permitting interlocutory appeals at 28 U.S.C. § 1292(b) is not met here, because the district court did not certify that the decision should be immediately appealable, and Graham did not request that the court do so.

benefits determination to a plan administrator is final, and therefore appealable, under 28 U.S.C. § 1291. "The decision should be made on a case-by-case basis applying well-settled principles governing 'final decisions.'" Rekstad, 238 F.3d at 1263; see also Metzger v. UNUM Life Ins. Co., 476 F.3d 1161, 1164 (10th Cir. 2007) (same). In Rekstad, both parties appealed a district court's order to remand a benefits determination claim to the plan administrator after the court concluded that the administrator's decision to deny benefits was arbitrary and capricious because it unreasonably relied on one particular doctor's medical examination. 238 F.3d at 1261. We held that the decision to remand was not final in that case.

Likening a benefits determination to a computation of damages, we noted that we had previously held that "a district court's grant of summary judgment to the plaintiff on an ERISA claim that left the question of damages unresolved was not a final appealable order." Id. at 1262 (citing Albright, 59 F.3d 1089). "[T]he well-accepted rule [is] that an order determining liability but leaving damages to be calculated is not final unless the correct amount of damages is self-evident and not likely to be the subject of future appeal." Id. And a district court's remand of a benefits decision to a plan administrator similarly is indeterminate. Id.

In Rekstad, we also drew a comparison between a district court's remand to a plan administrator and a remand to an administrative agency, calling it "perhaps the best analogue to an ERISA remand." Id. at 1262. "In the administrative context, a remand order is 'generally considered a nonfinal decision . . . not

subject to immediate review in the court of appeals.'" Id. (quoting Baca-Prieto v. Guigni, 95 F.3d 1006, 1008 (10th Cir. 1996)). We recently reiterated the administrative agency analogue in Metzger. See 476 F.3d at 1164.

However, we also have held that the "practical finality rule" provides an important caveat that could result in jurisdiction over an appeal of a remand decision. Rekstad, 238 F.3d at 1262. The practical finality rule may be invoked when the lack of immediate review of an order for an administrative remand "would violate basic judicial principles." Baca-Prieto, 95 F.3d at 1008 (quoting Bender v. Clark, 744 F.2d 1424, 1427 (10th Cir. 1984)). "In the context of a district court order remanding a matter to an administrative agency, jurisdiction may be appropriate when the issue presented is both urgent and important." Trout Unlimited v. U. S. Dep't of Agric., 441 F.3d 1214, 1218 (10th Cir. 2006) (citing Bender, 744 F.2d at 1427). "If these two conditions are met, this court will apply a balancing test and assert jurisdiction if 'the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review.'" Id. (quoting Bender, 744 F.2d at 1427). Under this rule, we review orders to remand a matter to an administrative agency when it is necessary to ensure that we can review important legal questions which a remand may make "effectively unreviewable," because administrative agencies "may be barred from seeking

district court (and thus circuit court) review of their own administrative decisions." Rekstad, 238 F.3d at 1262[3]; see also Metzger, 476 F.3d at 1165.

We have observed that the practical finality rule has led a "checkered life . . . in both our court and the United States Supreme Court," and we have "openly questioned whether [the] doctrine of practical finality is still viable." Baca-Prieto, 95 F.3d at 1009 (quotations omitted). We have suggested, though, that the doctrine is more robust in the context of agency review. See id. (noting that "this court has developed a particular form of practical finality . . . as a prudential limitation on the administrative-remand rule"); Rekstad, 238 F.3d at

---

[3] Rekstad's formulation of the practical finality rule borrows some concepts from the collateral order doctrine, which also provides a limited avenue for appealing an order that otherwise might be deemed non-final. The Supreme Court articulated the standards for appealing collateral orders in Cohen v. Beneficial Industrial Loan Corp. See 337 U.S. 541, 546 (1949). "To be appealable under the collateral order doctrine, an order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." Stubblefield v. Windsor Capital Group, 74 F.3d 990, 997 (10th Cir. 1996) (applying Cohen (quotation omitted)); see also Timpanogos Tribe v. Conway, 286 F.3d 1195, 1200 (10th Cir. 2002) (describing applicability of the collateral order doctrine over "an extremely narrow class of claims raised interlocutorily," and noting that the rule "sets a high bar").

The "practical finality rule," derived from Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152-53 (1964), provides a somewhat broader opportunity for appeal than the collateral order doctrine. "[T]he finality requirements of 28 U.S.C. § 1291 . . . need not strictly come within the Cohen [] 'collateral order' doctrine if, in a practical sense, justice may require immediate review." Cotton Petroleum Corp. v. U.S. Dep't of Interior, 870 F.2d 1515, 1522 (10th Cir. 1989) (citing Bender, 744 F.2d at 1426-27). We have contrasted the "balancing test" of the practical finality rule with "the mechanical analysis of the collateral order doctrine." Id. (quoting Bender, 744 F.2d at 1427).

1262 (noting the practical finality rule "exists in the administrative agency context, if nowhere else").  Still, we have cautioned that the doctrine "must be narrowly construed to preserve the vitality of § 1291." Trout Unlimited, 441 F.3d at 1219 (alteration, quotation omitted).

Pursuant to Rekstad's rule that we evaluate the finality of an ERISA remand order on a case-by-case basis, and applying the factors discussed in Rekstad, the district court's order here remanding Graham's claim to Hartford is not final.  The district court did not decide that Graham was eligible for benefits. It concluded only that Hartford's denial of her benefits violated ERISA because Hartford's decision was arbitrary and capricious.  Graham articulates no argument that a remand of her benefits claim to Hartford falls within the practical finality exception employed by this circuit.[4]  We discern nothing on appeal that is "urgent" or presents a "danger of injustice" if not immediately appealable. Trout Unlimited, 441 F.3d at 1218.

Hartford's redetermination of Graham's claim – which, Hartford assured the court at oral argument, would be de novo – may lead to an award of benefits for Graham.  If Hartford again determines that Graham is ineligible for benefits,

---

[4] Although Graham filed a supplemental brief devoted solely to the question of jurisdiction and finality, her main argument was that the district court erred in ordering a remand to Hartford rather than directing an award of benefits. This line of argument conflates the merits of her appeal with the question of jurisdiction, since even if the district court's decision to remand was patently wrong, it would not necessarily be final within the meaning of 28 U.S.C. § 1291.

she may return to district court to argue that Hartford's decision violates ERISA.[5]

We observe that Hartford has conceded that if its benefits determination on remand "is unfavorable to [Graham], she may simply move to reopen the case, or file an amended complaint to address any dissatisfaction with Hartford's decision on remand."

Graham argues that the district court's decision to remand is final in her case because it is based on the earlier decision to dismiss her state law claim that sought punitive damages, a type of relief that is not available from either a plan administrator on remand or a court reviewing the decision under ERISA.[6] But this argument does not change the availability of appellate review after Hartford redetermines Graham's claim for benefits. After the remand to Hartford, Graham still can appeal the district court's decision that ERISA preempts her state law claim, and if successful, she will be able to pursue punitive damages. In other words, this is not a situation in which remand may make either the district court's

_____

[5] Our conclusion interprets the district court's ERISA remand order as permitting either party to challenge the plan administrator's new eligibility determination. See Bowers v. Sheet Metal Workers' Nat'l Pension Fund, 365 F.3d 535, 537 (6th Cir. 2004).

[6] Oklahoma law provides that "[t]ort liability for breach of th[e] duty [of good faith and fear dealing] arises where there is a clear showing that the insurance company unreasonably and in bad faith withheld payment of the claim of the insured." Hale v. A.G. Ins. Co., 138 P.3d 567, 572 (Okla. Ct. Civ. App. 2006) (citing Christian v. Am. Home Assurance Co., 577 P.2d 899, 901 (Okla. 1977), which holds that breach of the duty of good faith permits the insured to "recover consequential and, in a proper case, punitive, damages").

earlier decision that ERISA preempted Graham's state law claim or the merits of Hartford's decision on Graham's claim for benefits "effectively unreviewable." Rekstad, 238 F.3d at 1262.

Graham also contends that the order is a final judgment, because to hold otherwise allows a plan administrator to delay awarding benefits with impunity, since the administrator is not penalized for improperly denying benefits in the first instance. But the mere fact that ERISA does not expressly penalize a plan administrator for its initial arbitrary and capricious denial – an issue of statutory design that rests in the hands of Congress – does not warrant a change in our jurisprudence surrounding finality.[7]

We note that although circuits vary on how they approach the issue of finality in cases involving ERISA remand orders, see Metzger, 476 F.3d at 1165 n.1 (describing the circuit split), Graham would fare no better under most of those approaches. The majority of circuits have relied on one of the analogues invoked in Rekstad or the collateral order doctrine in deciding whether a decision to remand a benefits decision to a plan administrator is final. See Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund, 425 F.3d 1087, 1090, 1092 (8th Cir. 2005) (following the First, Sixth, Ninth, Tenth and Eleventh Circuits in holding

_____

[7] In any event, ERISA authorizes a district court to award attorney's fees, see 29 U.S.C. § 1132(g)(1), which likely provides a disincentive for a plan administrator to engage in dilatory tactics purely for the sake of delaying benefits.

that "an order remanding to an ERISA plan administrator for further proceedings is interlocutory in nature and therefore not immediately appealable, particularly when the district court retained jurisdiction or otherwise deferred considering the merits of the administrator's decision being reviewed").  The Sixth Circuit has found that an order to remand was not final, in part because the "assessment of damages or awarding of other relief remains to be resolved."  Bowers v. Sheet Metal Workers' Nat'l Pension Fund, 365 F.3d 535, 536 (6th Cir. 2004) (quoting Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744 (1976)).

A number of other circuits apply the comparatively strict collateral order doctrine as a means for appealing a remand to a plan administrator, and in cases similar to the one at bar, hold that a district court remand order is not final.  See Borntrager, 425 F.3d at 1092 (reiterating Supreme Court precedent that the doctrine is a "narrow exception" and noting that "[w]hile there may be factors unique to the world of administrative law that justify a somewhat broader final order exception for orders remanding to federal agencies, in our view no such factors apply to orders remanding to private ERISA plan administrators"); Petralia v. AT&T Global Info. Solutions, Co., 114 F.3d 352, 354 (1st Cir. 1997) (holding a remand order was not final under the collateral order doctrine, since the issue remanded to the plan was the plaintiff's "continued eligibility for benefits," which was "the very heart of th[e] case"); Shannon v. Jack Eckerd Corp., 55 F.3d 561, 563 (11th Cir. 1995) (similarly holding that the decision to

remand is not "completely separate" from the merits, but rather is "inextricably intertwined with the merits of [the claimant's] eligibility for benefits").[8]

The Seventh Circuit has taken a minority approach that often concludes that ERISA remand orders are final and appealable. That court observed that "[r]emands to plan administrators serve the same functions as remands to the Commissioner [of Social Security], which implies the same jurisdictional treatment for purposes of § 1291." Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 978-79 (7th Cir. 1999) (discussing 42 U.S.C. § 405(g) and Sullivan v. Finkelstein, 496 U.S. 617, 625 (1990)). The Perlman court also drew support from an analogy to arbitration, since the Federal Arbitration Act permits appeals of district court orders vacating arbitration awards, 9 U.S.C. § 16(a)(1)(E), and a court order to remand to a plan

_____

[8] The Ninth Circuit has applied to ERISA decisions a hybrid of the practical finality and collateral order doctrines in assessing whether a district court's remand to a plan administrator is final and appealable. Hensley v. Nw. Permanente P.C. Ret. Plan & Trust, 258 F.3d 986, 993 (9th Cir. 2001) (defining three factors as "(1) the district court order conclusively resolved a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable").

The Hensley court found that its remand order was a final and appealable decision, because it met all three factors. Central to the dispute was whether the plaintiffs were "employees" under the plan – a severable legal issue necessary to deciding whether the plaintiffs were eligible for plan benefits – and because the plan had determined they were not employees, the plan had never addressed the merits of their claims. Id. at 990-91. Our matter differs in that Hartford does not dispute that Graham is a plan participant, has addressed the merits of her claim for benefits, and will do so again on remand.

administrator for redetermination is comparable to vacating the plan's denial decision. Perlman, 195 F.3d at 980. However, this minority approach has not been adopted by this circuit, and has not attracted support from other circuits either. Specifically, the Sixth Circuit has criticized the argument comparing ERISA to Social Security remands, noting:

> . . . 42 U.S.C. § 405(g) specifically grants courts of appeals jurisdiction over orders remanding social security claims to the Commissioner [of Social Security]. No statutory language permits similar appeals under ERISA. The existence of language authorizing appeals from remand orders under the social security laws implies that those orders would not constitute final decisions under 28 U.S.C. § 1291. In the absence of a statutory grant of jurisdiction, this court declines to expand its jurisdiction by analogy.

Bowers, 365 F.3d at 537-38. We reject the minority approach here as well.

Finally, Graham contends that the district court's remand order is final because the court intended its decision to be final, pointing to the docket entries for the January 20, 2006, order and judgment remanding her claim to Hartford, at which the clerk states under each entry, "terminates case." Furthermore, a separate entry was made in the docket for January 20, 2006, stating "Civil Case Terminated." However, when we question the finality of a district court's decision to remand a benefits determination to the plan administrator, we "analyze the substance of the district court's decision, not its label or form." Albright, 59 F.3d at 1092. For example, in Metzger, we drew no legal conclusions from the fact that the district court had earlier determined that its

- 17 -

2004 remand order was final, because the court effectively amended that order by reversing itself in 2006. Metzger, 476 F.3d at 1164-65. Instead, we held that this series of events rendered the first order interlocutory. Other courts similarly have disregarded the administrative entries regarding the status of an ERISA case when it is clear that the last district court decision was not a final judgment. See, e.g., Petralia, 114 F.3d at 355; Borntrager, 425 F.3d at 1090-91; Williamson v. UNUM Life Ins. Co., 160 F.3d 1247, 1253 (9th Cir. 1998). We follow the same path here in holding that regardless of the notations in the docket entries for the district court's remand decision, that decision is non-final in substance for the reasons given above.

Accordingly, we dismiss this appeal for lack of jurisdiction under 28 U.S.C. § 1291.

### III. Attorney's Fees

Graham requests that we reverse the district court's decision not to award attorney's fees that are authorized in ERISA actions.[9] However, we conclude that the motion for fees was not ripe before the district court, and therefore we vacate the district court's decision and remand with instructions to dismiss the motion without prejudice.

---

[9] See 29 U.S.C. § 1132(g)(1) ("In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

"The ripeness doctrine stems from the 'cases and controversies' requirement in Article III, and it also reflects important prudential limitations on a court's exercise of jurisdiction." Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc., 454 F.3d 1128, 1140 (10th Cir. 2006) (quotation, alterations omitted). "[R]ipeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Morgan v. McCotter, 365 F.3d 882, 890 (10th Cir. 2004) (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003)). A question of ripeness focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention." Id. (quoting Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975)). "Determining whether the issues presented by this case are ripe for review requires us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. (quotation omitted).

Courts vacate attorney's fees decisions when the presence of ongoing litigation precludes an informed determination of whether the moving party is in fact entitled to attorney's fees under the relevant law. See, e.g., Bennett v. Coors Brewing Co., 189 F.3d 1221, 1238, 1239 (10th Cir. 1999); see also Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 674 (9th Cir. 2004); Star Phoenix Mining Co. v. West One Bank, 147 F.3d 1145, 1148 (9th Cir. 1998).

Courts considering whether to award attorney's fees in ERISA actions consider five factors: a party's culpability or bad faith; its ability to satisfy an award of fees; the deterrence value of an award; the number of plan participants affected by the case or the significance of the impact of the legal question involved; and "the relative merits of the parties' positions." Gordon, 724 F.2d at 109. We also afford certain weight to prevailing party status, even though we acknowledge that the ERISA attorney's fees provision is not expressly directed at prevailing parties. See, e.g., Deboard v. Sunshine Mining & Ref. Co., 208 F.3d 1228, 1245 (10th Cir. 2000) (reversing and remanding an attorney's fee award because appellate decision "alter[ed] the relative merits of the parties' positions"); Morgan v. Indep. Drivers Ass'n Pension Plan, 975 F.2d 1467, 1471 (10th Cir. 1992) ("Although the statute does not expressly require that a party prevail as a condition to receiving an award of attorneys' fees . . . we have remanded cases for denial of fees without explanation only when the party seeking fees had prevailed at least partially." (citations omitted)); Arfsten v. Frontier Airlines, Inc. Ret. Plan for Pilots, 967 F.2d 438, 442 n.3 (10th Cir. 1992) ("Because we reverse the district court's decision on the merits, plaintiff is not a prevailing party, and his arguments on attorney's fees are moot.").

In this case, the district court denied Graham's motion for attorney's fees, concluding that its determination that Hartford acted arbitrarily and capriciously did not equate to a finding of bad faith under the first Gordon factor. The court

found two other Gordon factors similarly were not satisfied here, because (1) Graham pursued benefits for only herself and her action did not involve a significant legal question and (2) the record did not suggest that her claim for benefits was "particularly meritorious." Ordinarily, we review district courts' attorney's fees decisions for abuse of discretion. Gordon, 724 F.2d at 108. At this point in the litigation, however, a decision regarding attorney's fees is premature. The district court cannot properly apply the five-factor Gordon test, particularly with respect to the merits of the parties' positions and the impact of the litigation on other beneficiaries, when it remains to be seen whether Graham is entitled to benefits under the plan. Hartford will make a new determination of Graham's eligibility for benefits, and if eligibility is denied again, Graham will have the opportunity to re-argue before the district court that Hartford's new decision violates ERISA. The issues presented in Graham's motion for attorney's fees are not "fit" for judicial decision at this time. Morgan, 365 F.3d at 890.[10]

In dismissing the current fee motion on grounds of ripeness, we do not intend to create a per se rule that attorney's fees are inappropriate whenever a district court decides to remand a claim to the plan administrator rather than

[10] Graham argues that courts need to award attorney's fees in ERISA cases even at the remand stage in light of the realities of ERISA litigation, which often feature a plaintiff suffering from health problems who can afford to hire a lawyer only on a contingency fee arrangement. However, initiating this type of policy decision in authorizing attorney's fees properly lies with Congress.

ordering benefits directly.[11] ERISA provides procedural protections to plan participants by statute and in its implementing regulations, which require plan administrators to provide certain notices and appeals procedures in making benefits determinations. See, e.g., 29 C.F.R. § 2560.503-1 (setting forth minimum requirements for claims procedures in employee benefit plans). It is theoretically possible for a claimant to bring suit for egregious violations of ERISA's procedural protections and, upon remand to the plan administrator, still not succeed in obtaining benefits. The judicial discretion provided by 29 U.S.C. § 1132(g)(1) and our five-factor Gordon test permit a court, in the right case, to reward plaintiffs for holding plans accountable under ERISA. However, Graham does not argue that Hartford systemically is violating ERISA procedures – and indeed, does not cite to any specific regulatory or procedural violation by Hartford – that would have made the issue of attorney's fees ripe in this case.

Because the district court decided the issue of attorney's fees before it was ripe, we vacate that decision and remand with instructions to dismiss without prejudice Graham's claim for fees.

---

[11] Hartford argues that we have no jurisdiction over the appeal of the denial of attorney's fees because the underlying order to remand to the plan administrator is not a final decision within the meaning of 28 U.S.C. § 1291. However, a petition for attorney's fees is considered "collateral to and separate from" the decision on the case's merits. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988) (quotation omitted). Because our guidance on awarding attorney's fees under ERISA does not necessarily preclude an award when the district court remands a claim to the plan administrator, the district court's decision regarding fees in such a case is not inherently interlocutory.

## IV. Conclusion

We hold that the district court's decision remanding Graham's claim to Hartford for a full and fair redetermination of her eligibility for long-term disability benefits is not a final decision under the meaning of 28 U.S.C. § 1291, and therefore we DISMISS appeal No. 06-5054 for lack of jurisdiction. We conclude that, under the facts of this case, the related action for attorney's fees, No. 06-5142, is not ripe, because several of the factors we assess for the appropriateness of fees cannot be ascertained until Hartford redetermines Graham's entitlement to benefits. Therefore, we VACATE the district court's denial of Graham's motion for attorney's fees and REMAND with instructions to dismiss her motion without prejudice.