FILED
United States Court of Appeals
Tenth Circuit

September 27, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHERRY EVANS-CARMICHAEL,
Individually; JEFF CARMICHAEL,
Individually and as Guardian and Next
Friend of Tia Carmichael,
a Minor,

        Plaintiffs-Appellants,

v.

THE UNITED STATES OF
AMERICA; THE FEDERAL
EMERGENCY MANAGEMENT
AGENCY,

        Defendants-Appellees.

No. 07-2047
(D.C. No. CIV-04-1119 WJ/ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs appeal from the district court's order enforcing the settlement of their district court action seeking an award of damages under the Cerro Grande Fire Assistance Act ("CGFAA"), Pub. L. 106-246, Division C, §§ 101-106, 114 Stat. 511, 582-590. Plaintiffs argue that an oral settlement agreement placed on the record in open court was not binding because they did not agree to release any potential constitutional claims they might have against the Federal Emergency Management Agency ("FEMA") arising from its handling of their claim.

Because we find that the court did not abuse its discretion in enforcing the settlement agreement, we AFFIRM.

I.

Sherry Evans-Carmichael, her husband Jeff Carmichael, and their daughter Tia Carmichael, were evacuated from their home in Los Alamos, New Mexico, in May 2000 when the Cerro Grande Fire came within fifty feet of their home. Because the wildfire was the end result of a prescribed burn that escaped the control of the National Park Service, Congress enacted the CGFAA to "compensate victims . . . for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries." Pub. L. 106-246, Division C, § 102(b). In September 2000, Ms. Evans-Carmichael filed a Proof of Loss with the Office of Cerro Grande Fire Claims, alleging that she and her daughter sustained $3,449,105 in damages, because when the family was allowed to return, she and her daughter experienced severe sensitivities to the

-2-

lingering smoke, the debris from the fire, and the chemicals used to clean their home, including chemicals from the new carpet pad. She further alleged that she and her daughter experienced nausea, mental confusion, dizzyness, itchy eyes, and other symptoms. Eventually, she was awarded $13,238.69 through the administrative process.

Dissatisfied with the award, plaintiffs then filed a district court complaint on October 1, 2004, in which they sought recovery for, among other things, property damage, the physical injuries suffered by Ms. Evans-Carmichael and Tia, and the loss of consortium suffered by Jeff Carmichael.[1] The complaint also alleged that FEMA violated their due process rights by basing a portion of its award on a medical report that was not properly part of the administrative record. They sought the equitable relief of either striking the report or allowing plaintiffs to supplement the record with further evidence of their injuries.

Following the lodging of the administrative record with the district court, plaintiffs filed objections to the record. The judge overruled some of the objections and referred the matter to a magistrate judge for disposition on the remaining objections and on the motion to supplement the record. The magistrate

---

[1] Under the federal regulations implementing the CGFAA, if a claimant is dissatisfied with the administrative decision, she may seek review in federal court. *See* 44 C.F.R. § 295.43.

judge held an evidentiary hearing on November 2, 2006.[2]   Following a recess

during the hearing, the parties advised the magistrate judge that they had reached

a settlement.  The following exchange between the magistrate judge and the

parties then occurred:

> The Court:  Would counsel please state the terms of the settlement
> for the record?
>
> Mr. Zavitz (Government Counsel):  The parties have agreed that the
> United States, FEMA, will pay the Plaintiffs $90,000 in a
> methodology or category that will be tax-free to the Plaintiffs, and
> that the customary time period for that payment by electronic funds
> transfer is 30 to 60 days.
>
> . . . .
>
> The Court:  All right.  All right.  Ms. Garrity, is that your
> understanding of the terms of the settlement?
>
> Ms. Garrity (Plainttiffs' Counsel):  It is, Your Honor, and my clients
> have indicated to me that they accept the settlement amount.
>
> The Court:  All right.  Mr. and Mrs. Carmichael, you understand that
> that's the terms of the settlement?
>
> Ms. Evans-Carmichael:  Yes.
>
> Mr. Carmichael:  Yes, I do, Your Honor.
>
> The Court:  All right.  And, Mr. Zavitz, are you going to prepare the
> necessary closing documentation?
>
> Mr. Zavitz:  Yes, we will prepare our standard fire claim release
> [inaudible], as provided by regulation [inaudible].

---

[2]   The district court proceedings were delayed when plaintiffs' original
counsel was granted leave to withdraw from the case and they were given time to
secure replacement counsel.

The Court:  All right.  And I will just make a docket entry and advise [the district court judge] that this matter has been settled and you'll submit the closing documentation within 30 to 60 days . . . .

Hr'g Tr. at 77-78.

On December 1, 2006, the government filed a motion and memorandum to enforce the settlement, in which it informed the court that plaintiffs had refused to sign the written settlement agreement and release.  Following the withdrawal of plaintiffs' counsel, they filed pro se objections to defendants' motion, generally arguing that (1) the administrative record was incomplete or inaccurate and that the administrative procedures were inadequate; (2) the settlement was the product of intimidation, misrepresentation, and duress; and (3) no settlement was reached because they never agreed to the terms of the written settlement agreement.  In regard to the third allegation, plaintiffs' argued that:

> [t]he written language of a settlement agreement is an essential part of the settlement.  The written language was not provided in court for the Plaintiffs to review, which made the settlement agreement uncertain and incomplete.  No reasonable person agrees to the terms of an agreement that does not contain elements that are essential to the person's situation.

R., Doc. 49 at 3.  But they provided no specifics as to which portions of the settlement agreement were objectionable, other than arguing that language regarding insurance subrogation protection found in the federal regulations related to the CGFAA should have been included in the settlement agreement.[3]

---

[3]     The CGFFA regulations provide the steps to be followed by "an insurer or

(continued...)

-5-

On February 1, 2007, the district court issued its his opinion and order enforcing the settlement agreement. The court determined that no evidentiary hearing was necessary because the material facts concerning the terms of the settlement agreement were undisputed, *see United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir 1993), and held that (1) plaintiffs' arguments regarding the completeness and accuracy of the administrative record and the adequacy of the administrative procedures were irrelevant to whether a settlement had been reached; (2) plaintiffs' claim that they had been pressured into settlement by their counsel, government counsel, and the court, were meritless; and (3) plaintiffs did not identify any specific portion of the written settlement as being contrary to the terms cited at the hearing, and their argument that oral settlement agreements are not binding lacked merit. The court granted the government's motion, ordered plaintiffs to execute the written settlement agreement, and ordered the government to deposit $90,000 into the court's registry. The court denied as moot the remaining motions because the "case ha[d] reached final resolution." R., Doc. 61 at 19. This appeal followed.

---

[3](...continued)
other third party with the rights of a subrogee" in filing a "Subrogation Notice of Loss" with the government to recover monies previously paid to persons injured by the fire. *See* 44 C.F.R. § 295.13.

II.

Before turning to the merits, we first address two motions filed by plaintiffs. The first, filed June 4, 2007, requests that this court: (1) provide plaintiffs with legal counsel because "this litigation presents complex and significant legal issues, the outcome of which may have wide impact," Pl's First Mot. for Relief at 2; (2) suspend the application of our own procedural rules "to prevent the dismissal of this case based on a procedural technicality, *id.* at 3; and (3) grant plaintiffs a six-month extension to reply to the government's response brief in order "to work with the court to access the law library," *id* at 5.

Plaintiffs' second motion, filed following the completion of briefing, informs this court that Ms. Evans-Carmichael has recently been diagnosed with cancer. This motion renews Plaintiffs' call for suspension of our rules and appointment of counsel, and seeks an eight-month extension of time to allow Ms. Evans-Carmichael to undergo impending medical treatment prior to filing supplemental briefing.[4]

---

[4] This second motion also calls on this court to "investigate why [FEMA] violated the Paperwork Reduction Act . . . ." Pl's Second Mot. for Relief at 1. Plaintiffs claim that some of the forms that FEMA required them to complete did not "display valid Office of Management and Budget (OMB) control numbers and . . . disclosures" and therefore claim their signatures might not be "legally binding." *Id.* at 3-4. This claim will not be addressed as it was not raised in Plaintiffs' opening or reply brief or, more importantly, before the district court. *See Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991) ("The failure to raise the issue with the trial court precludes review except for the most manifest error.").

As to plaintiffs' request for appointment of counsel, they have no Sixth Amendment right to counsel as civil litigants. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). Nevertheless, as they point out, this court does have a plan "[t]o provide representation in special cases for persons who are financially unable to obtain the services of counsel." *See* 10th Cir. Rules, Add. II, Plan for Appointment of Counsel in Special Civil Appeals. However, under this plan, we may appoint counsel only when a number of requirements are met. As to four of those requirements: (1) Plaintiffs have provided no evidence that they are financially unable to obtain the services of counsel; (2) the dispositive issue of this appeal is neither complex nor significant, (2) plaintiffs have effectively presented their argument on this issue, and (3) the interest of justice do not require appointment of counsel. *See id.*

As to plaintiffs' argument for a suspension of our procedural rules and an extension of time to file supplemental briefing, while it is clear that we have the power to grant both requests, *see* Fed. R. App. P. 2 (providing that court of appeals may suspend federal appellate rules for good cause); Fed. R. App. P. 26 (providing, among other things, that court of appeals may extend filing deadlines for good cause); 10th Cir. R. 2 (providing this court may suspend 10th Circuit rules), this case presents no good cause to exercise this power. This court liberally construes the appellate briefs of pro se parties. *See De Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007). Further, no extension of time to file

supplemental briefing is necessary at this point because the case is fully briefed. We deny the motions and turn to the merits of the appeal.

III.

The government states that no final order has been issued in this case and that our jurisdiction lies under 29 U.S.C. § 1292(a) which provides for review of the granting of injunctions. We disagree. We hold that we have jurisdiction under 28 U.S.C. § 1291, which provides "jurisdiction of appeals from all final decisions of the district courts." Although the court did not enter a judgment or dismissal order in this case, the district court's order granting defendants' motion to enforce is a final decision under § 1291.

> It is well settled that we can only address the underlying merits of a lawsuit if it meets the requirements for appellate jurisdiction outlined in 28 U.S.C. § 1291. A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. In considering whether the judgment constitutes a 'final decision' under § 1291, the label used to describe the judicial demand is not controlling-that is, we must analyze the substance of the district court's decision, not its label or form.

*Graham v. Hartford Life And Accident Ins. Co.*, Nos. 06-5054, 06-5142, 2007 WL 2405264, at *3 (10th Cir. Aug. 24, 2007) (citations and internal quotation marks omitted). "If no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review." *Burlington N. R.R. v. Huddleston*, 94 F.3d 1413, 1416 n.3 (10th Cir. 1996). In its order enforcing the settlement, the district court ordered the enforcement of an

agreement that ended the case. Although it would have been preferable for the court to enter a separate judgment dismissing plaintiffs' complaint, the order effectively resolved all of the matters between the parties, and was thus appealable as a final decision.

Turning to the merits, the majority of plaintiffs' briefs concern the alleged incompleteness and inaccuracy of the administrative record, the inadequacy of the administrative procedures, and the pressure they felt to settle the case. We have reviewed the record and the relevant law and these arguments are denied for substantially the reasons set forth by the district court[5]

Plaintiffs next argue that the court erred in summarily enforcing the settlement because the written agreement releasing their claims contained certain terms not discussed at the hearing. Specifically, they assert that "proper consideration for the agreement was not discussed in the court room." Aplt. Opening Br., Attach. A at 4, and that "[t]he agreement was ambiguous, uncertain

_____

[5] The briefs also complain about improper *district court* procedure and incompleteness of and inaccuracy in the district court record. These claims are moot. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. The crucial question is whether 'granting a present determination of the issues offered . . . will have some effect in the real world." *Citizens For Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (citation omitted). The decision of the district court was based on the parties' oral settlement agreement, and not the record before the court. Consequently, even if this court were to find that certain procedures were improper or that the record was incomplete, the district court's decision would still stand because plaintiffs agreed to settle their claims.

and incomplete [in that a]ll of the essential terms of the agreement were not supported by consideration and were illusory." Aplt. Reply Br. at 14. In particular, they claim that

> the "thing of value" or consideration in this case that is most precious to the Plaintiffs are their constitutional rights, the Rule of Law, insuring that no one is above the law, and helping other people that had personal injuries that were caused by the Cerro Grande Fire who were not treated fairly. . . . Any term of an agreement that involves signing away a Constitutional Right must be considered an "essential term" of an agreement. The written portion of this agreement is too broad . . . and would have prevented Plaintiffs from ever going back to correct the violations of their right to petition the Government for a redress of grievances . . . even the criminal activities that FEMA may have committed . . . and violations of their right to due process.

*Id.*

We review the court's decision to enforce a settlement agreement for abuse of discretion, applying state contract law.

> A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it. We review the district court's decision to enforce such an agreement for an abuse of discretion. An abuse of discretion occurs when the district court based its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling. Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law.

*Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citations and internal quotation marks omitted). Under New Mexico law, "[f]or an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual

-11-

assent by the parties to the material terms of the contract." *Pope v. Gap, Inc.*, 961 P.2d 1283, 1286-87 (N.M. Ct. App. 1998). Further, "[a]n oral stipulation for the compromise and settlement of claims . . . made in open court in the presence of the parties and preserved in the record of the court is as binding as a written agreement." *Esquibel v. Brown Constr. Co.*, 513 P.2d 1269, 1272 (N.M. Ct. App.1973) (quotation omitted).

In the district court, plaintiffs complained that their agreement was limited to the amount they would be paid to settle their suit and that since they had not seen the written agreement, they could not have agreed to any of the written provisions. The court read this argument to mean that oral settlement agreements are unenforceable. If we read the complaint the same way, our review would be limited to that argument, see *Hicks*, 928 F.2d at 970, and affirmance would be required, *see Esquibel*, 513 P.2d at 1272.

We recognize, however, that plaintiffs filed their objections pro se, and we will consider their claim to mean the oral settlement did not include an agreement to release any potential constitutional claims against FEMA. But even under this more liberal reading, their claim fails. Under § 104(e) of the CGFAA, an acceptance of payment under the CGFAA shall, among other things, "be final and conclusive on the claimant . . . with respect to all claims arising out of or relating to the same subject matter" and also shall "constitute a complete release of all claims against the United States (including any agency or employee of the United

-12-

States) under [the Federal Tort Claims Act], or any other Federal or State law, arising out of or relating to the same subject matter." Further, the CGFAA regulations provide that claimants who receive compensation under the CGFAA are required to sign a "Release and Certification Form." *See* 44 C.F.R. § 295.30(c). The government's counsel stated in open court that he would prepare this "standard fire claim release," and neither plaintiffs nor their counsel objected. As prepared, the written agreement does little more than incorporate the mandatory statutory release language, and specifically provides that the agreement constitutes this release.

Further, it is clear from plaintiffs' own briefs that they were aware from the beginning of the administrative process that the CGFAA provided for release of any potential constitutional claims against the government or its agency, FEMA. They admit that when they first filed their Notice of Loss with FEMA, they "asked for legal counsel to explain whey they had to sign away their constitutional rights" and that "Ms. Evans-Carmichael spent a considerable amount of time talking to a FEMA representative . . . about her concerns regarding the signing away of her constitutional rights." Aplt. Opening Br., Attach. A at 4. Consequently, the district court did not abuse its discretion in determining that the settlement contemplated a release of plaintiffs' potential constitutional claims against FEMA.

Finally, plaintiffs' main constitutional claim against FEMA was that the agency violated their due process rights by basing its award, at least partially, on evidence that was not properly part of the administrative record. This claim was specifically raised as part of the fourth cause of action of the complaint, R., Doc. 1 at 7; it was therefore clearly released as part of the settlement.

IV.

The District Court's Memorandum Opinion and Order Enforcing Settlement is therefore AFFIRMED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge